**T. MULITAUAOPELE et al., Plaintiffs**

v.

**PALEAFEI, Defendant**

No. 18-1953

High Court of American Samoa

Civil Jurisdiction, Trial Division

October 27, 1953

ARTHUR A. MORROW, *Chief Judge;* LETULIGASE-
NOA, *Associate Judge;* MALEPEAI, *Associate Judge;*
and APE, *Associate Judge.*

OPINION AND DECREE

Heard at Fagatogo on September 21 and 22, 1953, before
MORROW, *Chief Judge,* and *Associate Judges* LETU-
LIGASENOA, MALEPEAI and APE.

T. Mulitauaopele *pro se* et al.

Manaea for Paleafei.

OPINION OF THE COURT

MORROW, *Chief Judge.*

T. Mulitauaopele and twenty-eight others claiming to be
members of the Paleafei family filed a petition to enjoin
Paleafei, matai of the Paleafei family, from permitting a
church building to be erected on land of the Paleafei family
alleged to be the residential site of the Paleafei title.

It appeared from the evidence that Paleafei had given
permission to the faifeau of a certain church to erect a
church building on land of the Paleafei family in Laulii
and that construction of the church had been started. How-
ever, construction was halted within a day or so after the
filing of the petition on August 5, 1953.

That the place where the church was being built is a resi-
dential site of the Paleafei title is clear from the evidence.
Paleafei himself at one place in his testimony claimed that
the residential site is where the guest house of the Paleafei
now stands rather than where the church was being built.
However, taking his testimony as a whole, we are con-
vinced therefrom that the residential site is where the
church building was being put up and not where the guest
house is located. It appeared from the evidence that a
school building formerly stood on the location where the

94

church was being built and that it was removed at the instance of Paleafei in order that he might build his residence as a matai of the Paleafei family there. Referring to the place where the church was being built, Judge Malepeai asked Paleafei the following question: "But why do you authorize the Methodist Church to go ahead with the construction but you had in your own heart that you are going to put your living house there?" to which Paleafei replied, "As I have answered Judge Noa's question, I rather have the church house put on there than my living house." In response to the question "Why did you have it (the school house) moved across the road for?" Paleafei answered "The reason why they took the school house on the other side of the road because I had in mind to build a house in that place (the place in dispute) to live in." And again in his testimony Paleafei said "As I have stated yesterday, that I had the intention to build my living house there (where the church was being built), but I prefer the house for God and leave mine behind. And it's best for me to go and live in any other place or in any land of the Paleafei title." These answers of Paleafei himself as well as other evidence show very clearly that the residential site of the Paleafei title is where the school house was and that that location is where the church was being built.

This Court knows judicially that the custom in most of the families in American Samoa is for the matai to have a particular place for his living or residential fale. And the succeeding matais continue to use that place for residential purposes. That is the custom with but few exceptions. It is a matter of family pride for a Samoan clan to have its matai reside on a particular piece of the family land and to have succeeding matais live in the same place.

Section 2 of the Code of American Samoa, among other things, provides that "The customs of the Samoans not in conflict with the laws of American Samoa or the

laws of the United States concerning American Samoa shall be preserved." There is no law of American Samoa, nor any law of the United States concerning American Samoa, contrary to the custom of the Samoans to have the matai occupy a particular piece of family land for residential purposes.

It appears that before Paleafei gave permission for the church to be built on the residential site of the Paleafei title, he called a meeting of the Paleafei family members in the village of Laulii. Eleven or twelve members attended and apparently they approved having the church built on the residential site. Shortly thereafter Paleafei went to different places in Tutuila to consult with some other members of the Paleafei family in regard to the matter. It appears from the evidence that he consulted with four other members. The evidence is conflicting as to whether those four other members agreed; nevertheless, the permission was given by Paleafei to put up the church on the residential site. Paleafei himself testified that there were about hundred-fifty members in the Paleafei family saying with respect to the number in the family "I guess it's around hundred-fifty. . . ." Then he was asked, "Well, then, is it correct to say you have about hundred-fifty members of the Paleafei family scattered around the island?" to which he replied "Yes."

If it be conceded that all of the fifteen consulted agreed, it would appear that only about ten per cent [of] the entire membership of the family approved the plan. Without objection Paleafei introduced in evidence a document purporting to be signed by various members of the Paleafei family approving his action in granting permission to have the church built. There are sixty-two purported signatures on the document. It appears from the evidence that Paleafei signed a number of the purported signatures himself. One of the purported signers Letasi appears to be two

years old; Peni II and Meleli II appear to be three; Epa, Malatoese, Tolua S., Sifua, Sina, Leuia, and Afaese appear to be four. Obviously these young children weren't able to write with the skill with which their signatures appear to be written on the document. Their purported signatures were written by other people. Three alleged signers appear to be seven years of age.

If it be conceded that all these young children who didn't sign their names as well as the people whose names were signed by Paleafei favor the plan (and some of them are so young they could have no intelligent understanding of the matter involved) still the entire sixty-two do not constitute one-half of the about one hundred-fifty who constitute the membership of the Paleafei family. It is very obvious that Paleafei did not secure the approval of the majority of the Paleafei family before he gave the permission to have the church built.

■ The land on which the church is being built is not the private property of the Paleafei. It is clan property over which he as matai has certain control, but he does not have the power or authority under the customs of the Samoans to do what, in practical effect, is to give away a part of the family land without the consent of at least the majority of the family. It follows, therefore, that the permission, being unauthorized, should be recalled.

■ ■ The pastor of the church which was being built claims that Mulitauaopele and the other members of the Paleafei family who objected to the building of the church on the residential site of the Paleafei title were interfering with the freedom of religion. The Code provides that "No law shall be enacted respecting an establishment of religion; or prohibiting the free exercise thereof. . . ." This, it will be observed, is a prohibition against the Government, not against individuals who object to the use of their land for an unauthorized purpose. There has been no law en-

acted prohibiting the putting up of any church or churches anywhere. 'Pele, representing himself and the other twenty-eight who joined with him in the case, said that they had no objection whatever to the use of other land of the Paleafei family for the purpose of erecting the very church which is sought to erect here. Misa, a member of the Paleafei family and one of the twenty-eight co-parties with Mulitauaopele, in his testimony said, "I as Misa I am perfectly willing to have the church house in any of the Paleafei land with the exception of this place (meaning the residential site of the matai)." And 'Pele told the Court that "wherever on any lands of the Paleafei family in their village of Laulii Tuai or the other side Laulii Fou this church house will be put on, we are absolutely satisfied, but not for this certain places is designated to be the residential place for our head. What is dear in our hearts is to upkeep the traditions of the Samoan people and also to upkeep our matai systems in everywhere we go. And this work began without the full consent of the whole family." The objectors are not interfering with the freedom of religion under these circumstances. They have no objection whatever to the church being built on other land of the Paleafei title. They just object to its being built on the residential site of the matai with the approval of only a minority of the family.

We think the objectors headed by T. Mulitauaopele have the right to have the Samoan custom with reference to the residential site of the matai of the Paleafei family preserved in accordance with Section 2 of the Code heretofore quoted. Furthermore, we think from the evidence that Paleafei did not have authority to give the permission to have the church built on the residential site of the Paleafei title.

### DECREE

Accordingly, Paleafei is hereby ORDERED to stop the further construction of the church building which has been

started on the residential site of the Paleafei title in the village of Laulii, Tutuila. He is further ordered to pay T. Mulitauaopele $5.00 court costs.

Additional costs in the sum of $50.00 are hereby assessed against Paleafei, the same to be paid within 60 days to the Clerk of the High Court.